UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                               )
DIGITAL GADGETS, LLC,                          )
                                               )
                        Plaintiff,             )          Civil Action No.
                                               )
v.                                             )          **COMPLAINT**
                                               )
OSRAM SYLVANIA, INC.,                          )          **JURY TRIAL DEMANDED**
                                               )
                        Defendant.             )
_____)

Plaintiff Digital Gadgets, LLC, by its attorneys Judd Burstein P.C. and LibbyHoopes,

P.C., complaining of the Defendant, alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. §

1332(a)(1) in that this is a civil action where the matter in controversy exceeds the sum or value

of $75,000, exclusive of interest and costs, and is between citizens of different States.

2.      Venue lies in this District pursuant to 28 U.S.C. § 1391(a) in that Defendant

Osram Sylvania, Inc. ("OSI") is a resident of this District and 28 U.S.C. § 1391(c) in that the

contracts at issue in this action require the parties to litigate their dispute in the federal or state

courts of Massachusetts.

## PARTIES

3.      Plaintiff Digital Gadgets, LLC ("Digital") is a limited liability company

organized under the laws of the State of New York.  Its offices are located in the State of New

Jersey and its sole Member is a citizen of the State of New York.

4.      Defendant OSI is a corporation organized under the laws of the State of Delaware.  It maintains its principal offices in Danvers, Massachusetts.

### PLAINTIFF'S CLAIM FOR RELIEF

5.      OSI is the owner of the "Sylvania" Trademark ("Trademark") in various jurisdictions.

6.      Digital is engaged in the business of manufacturing and selling various electronic products, such as netbooks.

### THE PARTIES' CONTRACTS

7.      In a "Trademark License Agreement" ("DG1") effective as of September 1, 2007, OSI granted Digital an exclusive license to use the Trademark for products listed on Schedule B to DG1 in the United States, Puerto Rico, Canada, and Mexico.

8.      The initial term of DG1 was five years, ending on August 31, 2012.

9.      Sections 7.1(c) and (d) of DG1 provided:

The execution and delivery of this Agreement by OSI and performance of its obligations hereunder will not conflict with nor violate any agreement, instrument, or other contract to which OSI is a party or by which DG's right to use the Trademarks in the Territory in the manner contemplated hereby will be challenged or impaired in any way.

There are no claims, actions, suits, or other proceedings pending, or to the knowledge of OSI, threatened, which, if adversely determined, would adversely affect the ability of OSI to consummate the transactions contemplated by this Agreement or perform its obligations hereunder.

10.      In addition, Section 8.1 of DG1 required OSI to indemnify Digital from any claim alleging "any infringement of a third party's trademark ... resulting from [Digital's] use of Trademarks in accordance with this Agreement."

11.     Section 9.2 of DG1 gave Digital an unequivocal right to renew DG1 – including the representations and indemnification rights set forth in Sections 7.1(c) and (d), and 8.1 thereof – for an additional term of five years so long as it met certain procedural requirements, including exercising its option "on or before August 31, 2011, by sending a written notice to OSI...." Indeed, Section 9.3 of DG1 explicitly stated:

> The Second Term of this Agreement shall be an extension of all terms and conditions of this Agreement except that the Royalty Table in Section 9.4 shall be substituted for the Royalty Table in Section 4.3 during the Second Term, and the Product Category Sales Table of Section 9.5 shall be substituted for the Product Category Sales Table of Section 4.9 during the Second Term.

12.     In an agreement effective as of March 1, 2008, OSI and Digital entered into Amendment No. 1 to DG1.  It provided for, *inter alia*, changes in the products for which OSI was licensing the Trademark to Digital.  In this Amendment No. 1, Schedule B to DG1 was replaced by Schedule B to the Amendment No. 1.   There were no changes to Digital's absolute right under Section 9.2 of DG1 to renew DG1 at the conclusion of the term of that Agreement.

13.     In an agreement effective as of June 2, 2008, OSI and Digital entered into Amendment No. 2 to DG1.  It provided for, *inter alia*, changes in the products for which OSI was licensing the Trademark to Digital.  In this Amendment No. 2, a portion of Schedule B to Amendment No. 1 to DG1 was replaced by Schedule B to the Amendment No. 2.   Section 9.2 of DG1 was amended for "[h]ousekeeping]" purposes, but there was no change to Digital's absolute right under Section 9.2 of DG1 to renew DG1 at the conclusion of the term of that Agreement. Nor was Section 9.3 of DG1 amended.

14.     In a second "Trademark License Agreement" ("DG2") effective as of June 2, 2008, OSI granted Digital an exclusive license to use the Trademark for additional products listed on Schedule B to DG2.

15.     The initial term of DG2 was coextensive with that of DG1, *i.e.*, until August 31, 2012.

16.     Section 9.2 of DG2 gave Digital an unequivocal right to renew DG2 for an additional term of five years so long as it met certain procedural requirements, including exercising its option  "on or before August 31, 2011, by sending a written notice to OSI...." Section 9.3 of DG2 was identical to Section 9.3 of DG1.

17.     In an agreement effective as of March 1, 2009, OSI and Digital entered into Amendment No. 3 to DG1 and DG2, which merged DG2 into DG1. There were no changes to the expiration date of DG1 or DG2.   Section 9.2 of DG1 was amended with respect to the required contents of the renewal notice required of Digital, but there was no change to Digital's absolute right under Section 9.2 of DG1 to renew DG1 and DG2 for another five years "on or before August 31, 2011, by sending a written notice to OSI...."  Nor was there any change to Section 9.3 of DG1.

18.     In an agreement effective as of September 1, 2010, OSI and Digital entered into Amendment No. 4 to DG1, which granted OSI an additional license to distribute Sylvania branded tablet computers.  There were no changes to Sections 9.2 or 9.3 of DG1.   None  of  the above-described amendments to DG1 amended Sections 7.1(c), 7.1(d), 8.1 or 9.3 of DG1.[1]

---

[1]     Due to confidentiality provisions in the Parties' agreements, we have not attached those agreements as exhibits to this Complaint.

19.     Throughout the term of DG1, OSI, by reason of its quality assurance inspections, has had actual knowledge that all of Digital's licensed products are manufactured in China.  Yet, at least by the time of the execution of Amendment No. 4, OSI knew, and hid from Digital, the fact that the representations set forth Sections 7.2 (c) and (d) of DG1 were not true because, as discussed below on information and belief, (a) both Havells and Chinese export officials were contending that Havells's contractual rights vis a vis OSI gave it the right to insist that Sylvania trademarked goods – implicitly including products manufactured by Digital – bound for OSI's territory could not be exported from China, and (b) Chinese export officials were regularly holding up shipments of OSI's goods from China.

**THE HAVELLS DISPUTE**

20.     OSI and Havells India, Ltd. ("Havells") are parties to a 1992 agreement pursuant to which, *inter alia*, Havells owns the Sylvania Trademark for use in China.

21.     On information and belief, as early as 2009, OSI learned that its agreement with Havells, which granted Havells the right to the Trademark in China, gave rise to a claim by Chinese export officials and/or Havells that Havells's Chinese trademark rights prohibited OSI (and therefore, indirectly, Digital) from manufacturing goods in China bearing the Trademark even if such goods were for sale in geographic areas, such as the United States, where OSI holds the rights to the Trademark.  Hence, commencing in 2009, Chinese export officials were delaying the exports of OSI products.

22.     On information and belief, as early as April 2011, Havells successfully convinced Chinese export officials that, pursuant to its 1992 agreement with OSI, Havells's Sylvania trademark rights in China prohibited OSI (and therefore, indirectly, Digital) from manufacturing

goods in China bearing the Trademark even if such goods were for sale in geographic areas, such as the United States, where OSI holds the rights to the Trademark.

23.    Havells and OSI are presently involved in an arbitration concerning this dispute.

## DIGITAL RENEWS DG1 AND OSI BREACHES

24.    On August 31, 2011, Digital sent OSI the renewal notice required by Section 9.2 of DG1 as amended, including an executed "Amendment No. 5" drafted in accordance with the terms of Section 9.2.

25.    As noted, except as specifically set forth in Section 9.3 of DG1, Digital's renewal rights entitled it to the same terms contained in DG1, including (a) the same representations and warranties from OSI, that are contained in Sections 7.1(c) and (d) of DG1, and (b) the same indemnification rights set forth in Section 8.1 of DG1.

26.    On September 29, 2011, OSI, implicitly acknowledging that Digital had complied with Section 9.2's requirement for renewal of DG1, sent back a counter-draft of DG1 with a new paragraph never contemplated nor authorized by Section 9.3 of DG1. It stated:

> OSI's disclosure of Havells dispute. There is an ongoing dispute between Havells India Ltd. and OSI over the right to affix the **SYLVANIA** trademark on products licensed by OSI and manufactured outside of the United States, its territories and possessions, Puerto Rico, Canada, and Mexico ("Territory") when such branded products are destined to be exported to and sold within said Territory. DG hereby acknowledges its awareness and understanding of this dispute and will govern its actions accordingly.

27.    On October 7, 2011, counsel for Digital returned a signed copy of the proposed Amendment No. 5.  However, his cover letter stated:

> Please note that regarding the newly inserted paragraph 1, DG and the Guarantors acknowledge their respective "awareness and understanding of this dispute and will govern [their] actions. accordingly". However, the same is without prejudice to their rights and remedies, such as they may be, in connection with the

Agreement including, without limitation, the warranties and representations set forth in Article VII of the Agreement and the Indemnifications set forth in Article VIII of the Agreement.

28.     In response to counsel's letter, OSI informed Digital that "[t]he amendment was approved prior to being sent to you, but your side letter wasn't.  So the amendment and the side letter are now being reviewed."

29.     After no substantive response to Digital for six weeks, on November 18, 2011, OSI sent a new proposed Amendment No. 5 that was even more onerous and inconsistent with Section 9.3 of DG1 in that it conditioned the renewal of DG1 on Digital bearing all risk of Havells or the Chinese authorities stopping Digital's shipments of its product from China.  In relevant part, it stated that:

> Notwithstanding any other provision of the Agreement to the contrary, including but not limited to any warranty or representation express or implied, DG assumes the risk of any expense, loss or damage of any kind or type whatsoever arising out of, or as a consequence of, any disruption in DG's supply chain for Licensed Products during the second term caused by any action of Havells, or by any person or entity acting under Havells' control, or by any government or governmental agency acting to enforce Havells' rights. Without limiting the foregoing, DG hereby releases, acquits, and forever discharges OSI, its affiliated companies, successors and assigns, and/or any officer, employee, attorney, or agent of same, from any and all claims for relief and/or damages, including consequential damages, and any other claims of every kind and nature whatsoever, whether in law or equity, contract or tort, present or future, known or unknown, that DG may acquire as a result of any disruption in DG's supply chain for Licensed Products during the second term caused by, or as a consequence of, any action of Havells, or by any person or entity acting under Havells' control, or by any government or governmental agency acting to enforce Havells' right.

30.     On December 23, 2011, OSI further revised its proposed amendment by demanding even more onerous conditions.  As explained by OSI:

> You may know that OSI's parent, Siemens, is planning to divest OSI. An IPO is planned for the near future. The Havells dispute will surely be of serious concern to potential buyers. Siemens instructed OSI's management, rather poignantly, to

take no voluntary action in the Licensing Program during the pendency of the dispute that would increase OSI's potential liability to Havells (and, presumably, to a future purchaser). DG's request to add a second term would add such additional potential liability and thus would violate Siemens' order unless by agreement DG assumed the risk of Havells interference and released OSI from all claims during the pendency of the dispute. After reviewing the amendment this morning, I realized that in the event of a settlement or other resolution of the dispute in which OSI would pay Havells based on sales, there will have to be an additional provision requiring DG to reimburse OSI pro -rata on sales made during the second term (if any); without such a reimbursement provision, OSI will not be able to obtain Siemens' approval of the Amendment. I added this language in the attached draft.

31.     On December 28, 2011, Digital's counsel rejected the proposed amendment, noting that OSI was ignoring the fact that Digital had an unequivocal right to renew DG1 with Sections 7.1(c), 7.1(d) and 8.1 remaining in full force and effect.

32.     Thereafter, OSI did not respond to Digital's December 28, 2011 letter until May 14, 2012, at which time it again stated that its parent, Siemens, had prohibited it from renewing DG1 unless Digital waived the protections afforded it by Sections 7.1(c), 7.2(d) and 8.1 of DG1.

33.     By reason of the above-described conduct, OSI has breached DG1 as amended.

34.     Digital performed all of its duties and obligations under DG1, including adhering to the terms for renewal of DG1 pursuant to Section 9.2 of DG1.

35.     As a result of OSI's actions, Digital has suffered tens of millions of dollars in damages by reason of, *inter alia*, (a) its inability to take orders for the 2012 holiday season and thereafter due to the uncertainty over whether DG1 would be renewed and (b) it being forced to cease sales of Sylvania products altogether because it cannot secure its bargained-for renewal of DG1.

**WHEREFORE**, Plaintiff demands Judgment as follows:

A.      An award of actual damages as determined at trial, which are in no event less than $75,000.

B.      An award of the costs of this action.

C.      An Order granting such other and further relief as deemed just and proper by the Court.

Dated:  Boston, Massachusetts
        June 13, 2012

                                        Respectfully submitted,

                                        DIGITAL GADGETS, LLC
                                        By its attorneys,


                                        /s/ John J. Commisso
                                        Frank A. Libby, Jr. (BBO No. 299100)
                                        John J. Commisso (BBO No. 647002)
                                        LibbyHoopes, P.C.
                                        399 Boylston Street
                                        Boston, MA 02116
                                        Tel.: (617) 338-9300
                                        Fax: (617) 338-9911

                                        Judd Burstein (pro hac vice motion pending)
                                        Judd Burstein P.C.
                                        1790 Broadway
                                        New York, NY 10019
                                        Tel.: (212) 974-2400
                                        Fax: (212) 974-2944